**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

JOSEPH LYONS,

              Plaintiff,              NO. 08-CV-13631

vs.                                        JUDGE GERALD E. ROSEN
                                            MAG. JUDGE DONALD A. SCHEER

KELLY HOLDEN-SELBY, and
CHRISTINA STEWART,

              Defendants.
_____/

**ORDER REJECTING MAGISTRATE JUDGE'S
REPORT AND RECOMMENDATION**

At a session of said Court, held in
the U.S. Courthouse, Detroit, Michigan
on     August 6, 2010    

PRESENT:    Honorable Gerald E. Rosen
                        Chief Judge, United States District Court

## I. INTRODUCTION

On April 19, 2010, Magistrate Judge Donald A. Scheer issued a Report and Recommendation ("R & R") in this prisoner civil rights action, recommending that the Court grant a motion for summary judgment filed by Defendants Kelly Holden-Selby and Christina Stewart. Plaintiff Joseph Lyons timely filed objections to the R & R, arguing that Defendants' summary judgment motion should be denied. For the reasons set forth below, the Court finds merit in Plaintiff's objections and concludes that Defendants are not entitled to summary judgment in their favor on Plaintiff's claims.

## II. FACTUAL AND PROCEDURAL BACKGROUND

### A. THE PARTIES

Plaintiff Joseph Lyons was an inmate in the Southern Michigan Correctional Facility (SMCF) in Jackson, Michigan, for the crime of larceny by conversion. For a period of his incarceration at SMCF, Plaintiff was assigned to share a cell with Vernard Meadows. On February 3, 2007, Plaintiff was brutally assaulted by Meadows in their shared cell and subsequently hospitalized.

Defendants Kelly Holden-Selby and Christina Stewart are currently employed as correctional officers by the State of Michigan. At the time Plaintiff was housed at SMCF, Defendant Holden-Selby was an Assistant Resident Unit Supervisor (ARUS) and Defendant Stewart was a Resident Unit Officer (RUO) at the facility. They were among the correctional staff responsible for the safety and well-being of inmates housed within that portion of the facility where Plaintiff resided and where he was subsequently assaulted.

### B. EVENTS LEADING TO PLAINTIFF'S ASSAULT

Plaintiff was transferred to SMCF in December 2006. Soon thereafter Plaintiff began sharing a cell with Meadows, who is serving a 30-year sentence for second-degree murder and conspiracy to commit armed robbery. Meadows was transferred from Thumb Correctional Facility (TCF) to SMCF in March 2005 subsequent to detention due to fighting. Meadows also had prior disciplinary infractions on this record, though none of those prior incidents were of a violent nature. The March 2005 Transfer Order

2

categorizes Meadows as an inmate with a "high" risk of violence.[1]

According to Plaintiff, his relationship with Meadows deteriorated quickly after they began sharing a cell. Plaintiff claims that he attempted to avoid arguing with Meadows, but Meadows's erratic behavior progressed and manifested into his threatening to "butcher" Plaintiff with a shank sometime in January 2007. (Pl.'s Ex. 7, Pl.'s Dep. 8:12-13.) Plaintiff claims he did not immediately report this incident to correctional officers because he feared reprisal from Meadows. Rather, Plaintiff waited several days and then began to approach correctional officers to request a transfer.

Plaintiff alleges that over a period of approximately one week to ten days following the initial threat, during which time he was subjected to additional and repeated threats by Meadows, he informed various correctional officers at SMCF of Meadows's threatening behavior. Plaintiff testified that prison officials ignored his complaints or told him that they could not move him to a different cell. Plaintiff testified: "I told them that [Meadows] had verbally threatened my life, you know, and he had. By now he had said several times that, you know, he was going to kill me." (Pl.'s Dep. 10:9-11.) Plaintiff subsequently approached Defendant Holden-Selby. Plaintiff claims that upon entering her office she immediately asked him why she detected the odor of cigarette smoke, then ordered him back to his cell to brush his teeth before returning to her office. (Pl.'s Dep.

---

[1] A February 2005 Inmate Reclassification Notice similarly acknowledges that Meadows was a threat to other inmates and/or correctional staff, but also suggests that the action to transfer Meadows to SMCF was undertaken partly to protect Meadows rather than solely to protect TCF inmates from Meadows.

10:24-12:2.) Plaintiff alleges that Defendant Holden-Selby sent Defendant Stewart along with Plaintiff to examine his cell for cigarette smoke, which Defendant Stewart detected and after which he admitted to smoking indoors—in contravention of SMCF policy. (Pl.'s Dep. 10:24-12:2.) Plaintiff alleges that he and Defendant Stewart returned to Defendant Holden-Selby's office and that he then informed Holden-Selby, in the presence of Defendant Stewart, of Meadows's threats and possession of a shank. Plaintiff asserts that he said, "I need to be moved. My life is being threatened." (Pl.'s Dep. 11:19-20.) According to Plaintiff, Defendant Holden-Selby responded by saying "[y]ou know Mr. Lyons, if you wouldn't have been lying to me about the cigarette, I might believe you about your Bunkie. Get out of my office." (Pl.'s Dep. 11:24-12:2.)

Another inmate who overhead the conversation, Donnell Gill, testified at deposition:

> Q: . . . So you were outside Ms. Holden's office while Joe [Lyons] was asking to be moved. Did he indicate that Bone was threatening his life?
>
> A: He indicated that Bone was threatening him and being very verbally abusive to him . . ., that he was going to beat him, kill him, and things of that nature, and Ms. Boden [sic] made light of the situation and told him that she didn't feel anything like that would happen, she don't think he would do that . . . and I believe it was the following weekend that he was assaulted.
>
> Q: And I think her name is Holden; does that ring a bell?
>
> A: Holden, yeah, Kelly.

(Pl.'s Ex. 8, Gill Dep. 7:13-25.)[2]  Another inmate, Matthew Libby, testified that he witnessed arguments between Plaintiff and Meadows, and that Plaintiff talked to him about seeking a transfer from Defendant Holden-Selby.  Libby also testified that he saw Plaintiff go into Defendant Holden-Selby's office, but was not personally present when these visits occurred and did not overhear the conversations.  (Pl.'s Ex. 9, Libby Dep. 7:18-8:6.)

Plaintiff asserts that he went to speak with Defendant Holden-Selby "altogether three times." (Pl.'s Dep. 14:8.)  On each of those occasions, he claims that Defendant Holden-Selby summarily dismissed his concerns, refusing to listen to his requests for a room change.  He also claims that he asked various corrections officers to place him in the segregation unit for protection, but he never made this request directly to Defendant Holden-Selby.  In addition, Plaintiff testified that he approached Defendant Stewart individually and reiterated the threat posed by Meadows.  He alleges that Defendant Stewart admitted knowledge of the situation but claimed there was nothing correctional staff could do.

On February 3, 2007, Meadows smuggled a metal bar from the SMCF weight pit into his cell and struck the Plaintiff on the head knocking him unconscious.  Defendant Stewart discovered Plaintiff while she was making her rounds.  She testified that he was mostly unconscious and lying in a pool of blood when she found him.  Plaintiff was taken

---

[2] "Bone" is a nickname for Meadows.

to Foote Hospital and treated for a closed head injury.  As a result of the assault, Plaintiff alleges that he has suffered serious and permanent injury including the loss of full cognitive and physical function.  He testified that he has little or no memory of the month and a half that followed the assault.

Both Defendants admit to having a limited recollection of the events preceding the assault.  Defendant Holden-Selby testified at deposition that apart from reviewing internal prison records documenting her meetings with Plaintiff, she did not recall any conversation she had with him prior to the assault.  After having had the chance to examine an internal prison memorandum—which, notably, was not submitted as part of the record on this motion—Defendant Holden-Selby averred to its contents, agreed that she must have met with Plaintiff, but denied that any threat to his safety was disclosed at that meeting.  Additionally, in an affidavit submitted subsequent to her deposition, Defendant Holden-Selby states that in her only meeting with Plaintiff she asked him specifically whether he was being threatened or needed protection and that he responded, "[n]o, it's not that bad."  (Defs.' Ex. 2, Holden-Selby Aff. at 2.)  Defendant Stewart testified that it was general policy at the facility to report any threats between prisoners to the unit supervisor.  She also testified that she did not recall having any conversations with Plaintiff prior to the assault, though she vaguely recalled who he was based on a review of prison records.

## C. PROCEDURAL HISTORY

Through the present action, filed on August 21, 2008, Plaintiff claims that Defendants Holden-Shelby and Stewart were deliberately indifferent to Plaintiff's safety and welfare while he was incarcerated at the Southern Michigan Correctional Facility, in violation of his rights under the Eighth Amendment of the United States Constitution.[3] In a December 18, 2009 Motion for Summary Judgment, Defendants Holden-Selby and Stewart argue that Plaintiff failed to establish a failure-to-protect claim under the Eighth Amendment and that Defendants Holden-Selby and Stewart are entitled to qualified immunity. The Motion was referred to Magistrate Judge Donald A. Scheer for a Report and Recommendation. The Magistrate Judge filed his report on April 19, 2010, to which Plaintiff timely objected.

In his R&R, the Magistrate Judge concluded that Plaintiff failed to set out facts showing a compensable failure to protect him. Specifically, the Magistrate Judge found that Plaintiff presented only "unsubstantiated allegations, as to whether either of the Defendants [was] aware of facts from which the inference could be drawn that a substantial risk of serious harm to Plaintiff existed." (Dkt. # 31, R&R at 5.) The Magistrate Judge reached this conclusion by noting that, in Plaintiff's account of his conversation with Defendant Holden-Selby, he acknowledged that she did not believe Plaintiff when he first reported the threats. The Magistrate Judge also noted that Plaintiff

---

[3] Defendant Michigan Department of Corrections was dismissed from the case on October 23, 2008.

7

presented no evidence that he reported an imminent risk of actual violence.

## III. ANALYSIS

When reviewing the R&R of a Magistrate Judge on a dispositive matter, the court conducts a de novo review of those portions of the R&R to which timely objection has been filed. 28 U.S.C. 636(b)(1)(8); Fed. R. Civ. P. 72(b)(3). The court may accept, reject, or modify the recommendations of the Magistrate Judge. The court may also receive further evidence or return the matter to the Magistrate Judge with instructions for further proceedings. *Id.*

As his first objection to the R & R, Plaintiff contends that the Magistrate Judge improperly gave weight to testimony suggesting that Defendant Holden-Selby did not believe Plaintiff's reports that he faced harm at the hands of his cellmate. Plaintiff argues that Defendant Holden-Selby's belief or disbelief is not dispositive. This objection has merit. As Magistrate Judge Scheer explained in his April 19, 2010 Report and Recommendation, to state a failure-to-protect claim against a prison official under the Eighth Amendment, a plaintiff must show (1) "that he is incarcerated under conditions posing a substantial risk of serious harm," and (2) that the prison official had "the state of mind . . . of 'deliberate indifference' to inmate health or safety." *Farmer v. Brennan*, 511 U.S. 825, 838, 114 S. Ct. 1970 (1994) (citations omitted). The Supreme Court in *Farmer* held that "an Eighth Amendment claimant need not show that a prison official acted or failed to act *believing* that harm actually would befall an inmate; it is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm."

8

*Farmer*, 511 U.S. at 842 (emphasis added). In this case, regardless of Defendants' belief or disbelief as to Plaintiff's complaints, there is a question of fact as to whether Defendants failed to act in spite of knowledge of a substantial risk of harm to Plaintiff.

In deciding a summary judgment motion, the Court must view the evidence in a light most favorable to the nonmoving party. *Pack v. Damon Corp.,* 434 F.3d 810, 813 (6th Cir. 2006). Plaintiff submitted sufficient evidence from which a fact finder could reasonably conclude that prison officials were aware of Meadows's threats to kill Plaintiff. In support of his claim, Plaintiff testified that he reported the threats to Defendants three times, and his testimony is corroborated by testimony of inmates Libby and Gill. To counter Plaintiff's claim, Defendants' only evidence is a post-deposition affidavit, which states that Plaintiff never claimed his life was in danger. The affidavit implied only that Plaintiff and his cellmate were not compatible, and states that Defendant Holden-Selby told Plaintiff she would put him on a move list. The statements made in Defendant Holden-Selby's affidavit are inconsistent with her earlier deposition, at least to the extent that she stated she did not recall any conversations with Plaintiff.

The "sham affidavit" rule precludes a plaintiff from creating a factual issue for the purpose of defeating a motion for summary judgment by submitting an affidavit that contradicts or illegitimately supplements his or her prior deposition testimony without explaining the contradiction. *Reid v. Sears, Roebuck and Co.*, 790 F.2d 453, 460 (6th Cir. 1986); *Aerel, S.R.L. v. PCC Airfoils, L.L.C.,* 448 F.3d 899, 908 (6th Cir. 2006). In principle, the rule should also apply to defendants who support their motion for summary

judgment by presenting new evidence in an affidavit, which contradicts or illegitimately supplements their prior deposition testimony without explanation. Here, the record is void of any explanation from Defendants regarding the inconsistency between testimony in Defendant Holden-Selby's deposition and her affidavit. The Sixth Circuit has not yet extended the *Reid* holding to cover a party's failure to be more forthcoming during deposition testimony, but stresses the importance of "distinguishing legitimate efforts to supplement the summary judgment record from attempts to create a sham issue of material fact." *Aerel*, 448 F.3d at 908. It is premature for this Court to entirely discard Defendant Holden-Selby's affidavit as an illegitimate attempt to introduce sham facts without first providing Defendants an opportunity to explain the inconsistency. The post-deposition timing and presence of new factual issues in the affidavit do, however, call the credibility of the affidavit testimony into question. Of particular concern here is that the Magistrate Judge appears to have relied, at least in part, on this supplemental "testimony" through affidavit in granting Defendants' motion for summary judgment.

Prior to her deposition, Defendant Holden-Selby should have had access to the internal prison memorandum, which she used as the basis for her affidavit. The inconsistency between her deposition and affidavit raises questions of fact as to whether the documents she reviewed when preparing for her deposition included this prison memorandum, and why information she recalled in her affidavit was not offered during her deposition. A jury should weigh the credibility of the testimony offered in Defendant Holden-Selby's deposition and affidavit versus the credibility of the inmates' testimony

10

to decide if Defendants knew of a substantial risk of harm to Plaintiff and took any action (i.e. placing him on the move list) to address the risk.

A plaintiff need not show a "specific risk" of assault; rather, he may prove an Eighth Amendment violation by means of showing a "pervasive risk of harm." *Street v. Corrections Corp. of America*, 102 F.3d 810, 815 (6th Cir. 1996) (distinguishing *Marsh v. Arn*, 937 F.2d 1056, 1061 (6th Cir. 1991)).

> For example, if an Eighth Amendment plaintiff presents evidence showing that a substantial risk of inmate attacks was "longstanding, pervasive, well-documented, or expressly noted by prison officials in the past, and the circumstances suggest that the defendant-official being sued had been exposed to information concerning the risk and thus 'must have known' about it, then such evidence could be sufficient to permit a trier of fact to find that the defendant-official had actual knowledge of the risk."

*Id.* (quoting *Farmer*, 511 U.S. at 842-43).

Here, prison officials expressly noted that Meadows was a threat to other inmates in a February 2005 Inmate Reclassification Notice and categorized Meadows as an inmate with a "high" risk of violence in a March 2005 Transfer Order. This documentation, combined with the testimony of Plaintiff and two other inmates as to what Plaintiff told Defendants, is sufficient evidence from which a fact finder could reasonably conclude that Defendants had knowledge of a substantial risk of serious harm.

In his second objection, Plaintiff argues that knowledge of a substantial risk of serious harm to a prisoner can be inferred from the facts, including Meadows's record of assault. For reasons mentioned earlier in this opinion, the Court finds that Meadows's history of assault is relevant to Defendants' knowledge of substantial risk of harm to

11

Plaintiff. In addition, Plaintiff cites *Street*, in which the Sixth Circuit held that there was an issue of fact as to whether a risk to inmate safety and welfare became so "obvious" to be "substantial" after the inmate who attacked another inmate asked the guard on duty either, "What would you do if I kicked [Street's] ass?" or "What would you do if I knock [Street] out?" 102 F.3d at 816. Plaintiff argues that the evidence of warnings in this case is even stronger, since he alleges that he directly told prison officials that Meadows threatened his life and was going to kill him. The Court finds that this objection has merit, or at least, highlights a genuine issue of material fact, since Plaintiff clearly testified that he reported the threats. Although the testimony admitting knowledge of the inmate's threatening statements in *Street* came from the defendant prison official, for the purposes of summary judgment the Court must credit Plaintiff's testimony that Meadows threatened his life. 102 F.3d at 812.

In his third objection, Plaintiff argues that the Magistrate Judge ignored or did not give due weight to important corroborating testimony of Donnell Gill and Matthew Libby. The Magistrate Judge found that there were "no material issues raised, apart from Plaintiff's unsubstantiated allegations, as to whether the Defendants were aware of facts from which the inference could be drawn that a substantial risk of serious harm to Plaintiff existed." Plaintiff argues that the other inmates' testimony, in particular Donnell Gill's, corroborates at least part of Plaintiff's account. The Magistrate Judge did not discuss either Donnell Gill or Matthew Libby's testimony. Plaintiff's point is well taken here. It appears that the Magistrate Judge either failed to take account of this evidence or

12

improperly made a credibility determination as to its substance and disregarded it.

Finally, Plaintiff argues that the Magistrate Judge failed to take account of *Rider v. Louw*, 957 F. Supp. 983 (E.D. Mich. 1997), a case in which the court found that genuine issues of material fact existed as to whether a prison guard was aware of a pending attack on an inmate before it occurred and as to whether this alleged knowledge of an attack amounted to knowledge of "substantial risk" of serious injury to the inmate. In *Rider*, another inmate overheard a plan to attack the plaintiff prisoner within the half-hour. *Id.* at 984. The parties disputed whether he reported this threat to a prison officer. *Id.* The court found that this inmate's deposition testimony about what he told the prison officer was sufficient to create a genuine issue of material fact for a jury as to what the prison official knew. In this case, although the imminence of the threat was never explicitly framed, Plaintiff's alleged pleas to prison officials repeatedly articulated a threat to his life and the existence of a knife or shank in his cell. Although *Rider* is not binding upon this Court, it serves as a persuasive authority in supporting Plaintiff's argument regarding the weight to be given to the testimony of fellow inmates. In this case, like *Rider*, there is sufficient evidence to put the questions of Defendants' subjective knowledge and the imminence of the alleged threat to the jury.

Having found merit in each of Plaintiff's objections, the Court concludes that Plaintiff has proffered sufficient evidence from which a reasonable fact finder could return a verdict in his favor. Defendants also sought summary judgment on qualified immunity grounds. Although the Magistrate Judge did not reach the second part of a

qualified immunity analysis, the Court finds that Defendants are not entitled to qualified immunity. The doctrine of qualified immunity protects government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S. Ct. 2727 (1982). To overcome a public official's claim of qualified immunity, a plaintiff must show that the facts, taken in a light most favorable to the plaintiff, would allow a reasonable fact finder to determine (1) that there was a violation of a constitutional right, and (2) that the right was "clearly established" at the time of the violation. *See Pearson v. Callahan*, — U.S. —, 129 S. Ct. 808, 815 (2009). In this case, as discussed above, Plaintiff has submitted evidence to allow a reasonable finder of fact to determine that there was a violation of his Eighth Amendment rights. Finally, it is clearly established that prison officials violate a prisoner's Eighth Amendment rights if they are deliberately indifferent to a substantial risk of serious harm to the prisoner from a fellow inmate and the prisoner is assaulted by that fellow inmate. *Farmer*, 511 U.S. at 842-43, *Street*, 102 F.3d at 815. Therefore, Defendants are not entitled to qualified immunity from liability on Plaintiff's Eighth Amendment claims and summary judgment is not warranted.

## IV. CONCLUSION

For all the foregoing reasons,

NOW, THEREFORE, IT IS HEREBY ORDERED that Plaintiff's April 28, 2010 objections to the Magistrate Judge's April 19, 2010 Report and Recommendation are

14

SUSTAINED, as set forth in the Court's rulings in this Opinion and Order.

IT IS FURTHER ORDERED that the Magistrate Judge's Report and Recommendation (docket # 31) is REJECTED to the extent that it recommends that summary judgment be awarded to Defendants, and supplanted by the rulings in the present Opinion and Order to the extent that it recommends that Defendant's motion for summary judgment be denied.

In light of these rulings, IT IS FURTHER ORDERED that Defendant's motion for summary judgment (docket # 28) is DENIED.

                                     s/Gerald E. Rosen
                                     Chief Judge, United States District Court

Dated:  August 6, 2010

I hereby certify that a copy of the foregoing document was served upon counsel of record on August 6, 2010, by electronic and/or ordinary mail.

                                     s/Ruth A. Gunther
                                     Case Manager